UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| LANDMARK COMMUNITY BANK, N.A., a national banking association, | Case No. 12-CV-1103 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| JP MORGAN CHASE BANK, N.A., a national banking association, | |
| Defendant. | |

---

John F. Bonner, III, BONNER & BORHART LLP, for plaintiff.

Timothy M. Kelley, Adam D. Maier, and Calvin P. Hoffman, LEONARD, STREET AND DEINARD, for defendant.

Plaintiff Landmark Community Bank ("Landmark") brings claims of promissory estoppel, unjust enrichment, breach of contract, and declaratory judgment against defendant JP Morgan Chase Bank, N.A. ("JP Morgan"). This matter is before the Court on JP Morgan's motion for judgment on the pleadings. For the reasons stated below, the motion is granted.

I.  BACKGROUND

JP Morgan owns a note and mortgage on a parcel of real property in Ramsey County, Minnesota. Am. Compl. ¶ 4. Landmark owns a mortgage on the same property. Am. Compl. ¶ 5. Landmark's mortgage is subordinate to JP Morgan's mortgage. Am. Compl. ¶ 5.

In June 2009, Landmark commenced foreclosure of its subordinate mortgage due to the borrower's failure to make payment. Am. Compl. ¶ 6. In August 2010, JP Morgan sought to intervene in the foreclosure proceeding to foreclose its senior mortgage. Am. Compl. ¶ 8.

Shortly thereafter, Landmark and JP Morgan stipulated to the appointment of a receiver to manage the property. Am. Compl. ¶ 9.

In June 2011, Landmark and JP Morgan entered into a "Reinstatement, Subordination and Intercreditor Agreement" ("Agreement"). Am. Compl. ¶ 11; Maier Aff. July 12, 2012 [ECF No. 19] Ex. B [hereinafter "Agreement"]. Under the Agreement, Landmark paid $514,704.94 to JP Morgan to cure the borrower's default on JP Morgan's loan and reinstate JP Morgan's mortgage. Agreement ¶ 1; Am. Compl. ¶ 11.[1] In return, JP Morgan agreed to consent to Landmark's subordinate loan and mortgage (to which JP Morgan had not consented at the time that Landmark made the loan to the borrower) and to dismiss its pending foreclosure action. Agreement ¶¶ 2, 8. The Agreement expressly states, however, that JP Morgan's consent to Landmark's loan "shall not modify or amend the terms of the Senior Loan or any of the Senior Loan Documents and . . . the Senior Loan and the Senior Loan Documents shall at all times be prior to and maintain priority over the Subordinate Loan and the Subordinate Loan Documents" as provided in the Agreement. Agreement ¶ 2.

On September 29, 2011, the borrower filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. Am. Compl. ¶ 14. Under JP Morgan's mortgage, the bankruptcy filing constituted an event of default. Am. Compl. Ex. B ¶ 5.1(d). At Landmark's request, the bankruptcy trustee abandoned the property as a bankruptcy asset. Am. Compl. ¶ 14. Meanwhile,

---

[1] The Agreement recites the figure "$514,7004.94," which appears to be a typographical error; the Court therefore relies on the allegation in the amended complaint.

JP Morgan obtained an order lifting the bankruptcy stay and commenced a voluntary foreclosure by advertisement with a sale scheduled for April 27, 2012.[2]  Am. Compl. ¶ 15.

Two days before the scheduled foreclosure sale, Landmark commenced this action in state court.  ECF Nos. 1, 1-1.  After the state court granted Landmark's motion for a temporary restraining order, JP Morgan removed the case to this Court and filed an answer to Landmark's amended complaint.[3]  JP Morgan now moves for judgment on the pleadings.[4]

## II.  ANALYSIS

### A.  Standard of Review

In reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court applies the same standard used in reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Id.*  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[2] In addition to the borrower's bankruptcy, the foreclosure was triggered by several other alleged defaults.  Am. Compl. ¶ 16 & Ex. C (listing six defaults, including the bankruptcy filing).  Although Landmark makes arguments with respect to these additional alleged defaults, the Court need not address those arguments because the additional alleged defaults are not material to the Court's resolution of this case.

[3] For reasons that are not clear, Landmark did not file its amended complaint with the Court until shortly before the hearing on JP Morgan's motions.

[4] JP Morgan also moved to dissolve the state-court TRO.  For reasons explained at the hearing, the Court found that the state-court TRO dissolved of its own accord on May 18, 2012.  The Court therefore denied JP Morgan's motion to dissolve the TRO as moot.  *See* ECF No. 31.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint — such as the parties' Agreement — as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### B. Landmark's Claims

Landmark brings claims of promissory estoppel (Count I), unjust enrichment (Count II), breach of contract (Count III), and declaratory judgment (Count IV). The Court begins by addressing Landmark's breach-of-contract claim.

#### 1. Breach of Contract

In the Agreement, JP Morgan promised to dismiss its pending foreclosure action and consent to Landmark's subordinate mortgage in return for Landmark's $514,704.94 payment. Landmark does not allege that JP Morgan failed to keep these promises, and in fact Landmark admitted at oral argument that JP Morgan complied with the literal terms of the Agreement. In other words, JP Morgan did *exactly* what it promised to do in return for Landmark's payment. Landmark nevertheless argues that JP Morgan breached the contract, because, Landmark says, JP Morgan violated the implied covenant of good faith and fair dealing by seeking to foreclose on the property.

At oral argument, Landmark conceded that JP Morgan would have the right to foreclose if there was a "genuine material default" on its mortgage. And indeed, leaving aside what Landmark tries to read into the Agreement and the mortgage by its use of the terms "genuine"

and "material," that is what the Agreement says:  It says that JP Morgan's consent to Landmark's mortgage "shall not modify or amend the terms of the Senior Loan or any of the Senior Loan Documents . . . ."  Agreement ¶ 2.  Under those documents, the borrower's bankruptcy filing unquestionably constitutes an event of default that gives JP Morgan the right to foreclose.  Am. Compl. Ex. B ¶¶ 5.1(d), 5.3(c).

Landmark's main argument is that, notwithstanding JP Morgan's clear right to foreclose its mortgage if the borrower files for bankruptcy protection, JP Morgan has no right to foreclose in this instance because the borrower's bankruptcy was "cured" when the bankruptcy trustee abandoned the property.  For that reason, Landmark argues, the bankruptcy was not a "genuine" or "material" default.

The problem with Landmark's argument is that nothing in JP Morgan's mortgage purports to limit JP Morgan's right to foreclose only to some subset of defaults that are "genuine" or "material."  Nor does Landmark cite any statute, regulation, or judicial decision that would limit JP Morgan's right to foreclose in this manner.  Likewise, nothing in the mortgage gives the borrower the right to "cure" a voluntary bankruptcy filing or states that the abandonment of the property by the bankruptcy trustee constitutes a "cure" of the default.  Nor has Landmark cited any authority for the proposition that a borrower has a legal right to cure a default in this situation even when the mortgage itself grants no such right.  Because JP Morgan has the contractual right to foreclose, Landmark cannot maintain a claim for a breach of the covenant of good faith and fair dealing based on the foreclosure — that is, based on JP Morgan doing precisely what the contract gave it a right to do.  *See Sterling Capital Advisors, Inc. v.*

*Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) ("A party to a contract does not act in bad faith by asserting or enforcing its legal and contractual rights." (citation and quotations omitted)).

Landmark's position boils down to an argument that it is "unfair" for JP Morgan to pursue foreclosure in light of the trustee's abandonment of the property. In Landmark's view, the abandonment resolved the only legitimate objection that JP Morgan could have had to the bankruptcy — namely, that the bankruptcy proceeding might adversely affect JP Morgan's interest in the property. Even if the Court agreed with Landmark's fairness argument, the Court could not grant relief to Landmark because JP Morgan has the clear contractual right to foreclose, and whether JP Morgan is acting fairly in exercising that right is irrelevant. In any event, the Court does not agree with Landmark's opinion about the fairness of JP Morgan's action.

Landmark's argument ignores that a mortgage's grant of an interest in property is not an end in itself. Rather, the purpose of a mortgage is to secure a loan, and the way that a mortgage secures a loan is by giving the lender the right to recover the loan proceeds through a foreclosure sale. (Indeed, because the note secured by JP Morgan's mortgage is nonrecourse, *see* Am. Compl. Ex. A [ECF No. 26-1 at 8], a sale of the property is the *only* way for JP Morgan to recover the loan proceeds in the event that the borrower ceases to pay the loan.) When a borrower files for bankruptcy, it is perfectly rational for any lender in JP Morgan's position to fear that its loan may not be timely and fully repaid. This is true whether or not the property securing the loan is part of the bankruptcy estate; the fact remains that the borrower is insolvent and is seeking bankruptcy protection. There is nothing unfair about a lender exercising its right

to foreclose under these circumstances; that is the whole point of a mortgage. The Court therefore dismisses Landmark's breach-of-contract claim.[5]

2. Equitable Claims

Both of Landmark's equitable claims are based on its payment of $514,704.94 to JP Morgan pursuant to the Agreement. *See* Am. Compl. ¶¶ 23, 26 (promissory-estoppel claim alleging that Landmark paid $514,000 to JP Morgan for the purpose of reinstating JP Morgan's mortgage and that, in return, "[JP Morgan] agreed to leave the [JP Morgan] obligation intact for Landmark if Landmark became the fee owner of the Property following its foreclosure"); Am. Compl. ¶¶ 32-33 (alleging that JP Morgan "knowingly and willingly" accepted $514,000 from Landmark and has been unjustly enriched by failing to "abid[e] by its agreement to not foreclose and to allow the [JP Morgan] Obligation to remain on the Property").[6]

There is no dispute that the parties' rights in this case are governed by a valid contract. Minnesota courts have repeatedly held that "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981); *see also Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984) ("Because there was an express contract in this case, the trial court's award of compensation under a quasi-contract or an unjust enrichment theory, which in essence amounted

---

[5]Landmark also seeks a declaration that the voluntary foreclosure agreement between JP Morgan and the borrower violates the Agreement between Landmark and JP Morgan. Am. Compl. ¶ 43. Landmark's declaratory-judgment claim fails for the same reasons that its breach-of-contract claim fails.

[6]It is clear, from the context of the amended complaint, that the "$514,000" payment referenced in the promissory-estoppel and unjust-enrichment claims is in fact the $514,704.94 payment made pursuant to the parties' Agreement.

to an award in *quantum meruit*, was contrary to well-established Minnesota case law"); *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. 2010) ("Silta cannot claim that Cliffs was unjustly enriched when Cliffs acted in accordance with the parties' agreement.").

There are narrow exceptions to this doctrine; for example, when a contract for services does not fully specify how to calculate compensation, the service provider might be able to recover in equity for the reasonable value of his services. *See Olympus Ins. Co. v. Aon Benfield, Inc.*, No. 11-2607, 2012 WL 1072334, at *8 n.4 (D. Minn. Mar. 30, 2012) (citing cases). None of those exceptions applies here, however. The Agreement specifies what promises JP Morgan made in return for Landmark's payment of $514,704.14 and, as discussed above, Landmark does not allege that JP Morgan breached any of those promises. Landmark's equitable claims are therefore precluded.

Finally, it is worth noting that Landmark's promissory-estoppel claim fails for an additional reason: The basis of that claim is Landmark's allegation that it paid $514,704.14 in return for JP Morgan's alleged promise to leave the JP Morgan mortgage in place in the event that Landmark became the fee owner of the property. Am. Compl. ¶ 26. Landmark does not allege that it *is* the fee owner of the property, however, and thus there is no basis to infer that JP Morgan breached any such promise. The Court therefore grants JP Morgan's motion for judgment on the pleadings with respect to Landmark's equitable claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Defendant's motion for judgment on the pleadings [ECF No. 12] is GRANTED.

2. Plaintiff's amended complaint [ECF No. 26] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 2, 2012               s/Patrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge